UNION BUILDING CORPORATION
et al., Appellants,

v.

J & J BUILDING & MAINTENANCE
CONTRACTORS, INC., Appellee.

No. B1898.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Feb. 28, 1979.

Rehearing Denied March 21, 1979.

Chris Dixie, Dixie, Wolf & Dixie, Bertrand C. Moser, Houston, for appellants.

Jeffrey R. Parsons, Fulbright & Jaworski, Houston, for appellee.

J. CURTISS BROWN, Chief Justice.

Plaintiff, suing to recover for services rendered and materials delivered while remodeling an office building owned by defendants, was awarded judgment for $48,-800.00 plus interest, and attorney's fees. Appellants, defendants below, question the propriety of both items of recovery.

J & J Building & Maintenance Contractors, Inc. (appellee or J & J), contracted to remodel an office building belonging to a

corporation, Union Building Corporation, which is composed of Locals 968 and 988 of the International Brotherhood of Teamsters, Chauffeurs, Helpers and Warehousemen of America, (appellants or Union). The basic contract called for remodeling in compliance with a set of plans at a contract price of $100,500.00. The contract also provided:

> All changes or alterations from the drawings will be charged by labor and materials plus 25% burden and 10% profit. . .

> Any alteration or deviation from the above specifications involving extra costs, will be executed only upon written orders, and will become an extra charge over and above the estimate.

Appellee, as general contractor, electing not to do any of the work itself, subcontracted the work under the basic contract to various subcontractors, none of whom are parties to this suit. Almost from the inception, changes and alterations in the original plans were *orally* agreed to by the parties. As the remodeling proceeded, appellee presented appellants with requests for progress payments and, at first, appellants honored such requests. When appellants later requested itemization of bills for extras before payment, appellee walked off the job, subsequently bringing this action.

At trial, appellants contended the parties had renegotiated the contract to provide for a gross amount of $108,000.00 to cover both the original plans and the "extras" later agreed to by the parties. The jury found that no such renegotiation occurred, therefore, that finding not being questioned, the contract for $100,500.00 plus "extras" is the relevant contract in this appeal.

Appellee sought recovery under alternative theories of *quantum meruit* and contract. We shall address the *quantum meruit* issues first. As noted by the supreme court:

> The right to recover in *quantum meruit* is based upon a promise implied by law to pay for beneficial services rendered and knowingly accepted. *Davidson v. Clearman*, 391 S.W.2d 48 (Tex.1965). If a valid

express contract covering the subject matter exists there can be no recovery upon a contract implied by law. *Woodard v. Southwest States, Inc.*, 384 S.W.2d 674 (Tex.1964). However, the existence of an express contract does not preclude recovery in *quantum meruit* for *the reasonable value of services rendered and accepted which are not covered by the contract*. *City of Galveston v. O'Mara*, 146 S.W.2d 416 (Tex.Civ.App.— Galveston 1940), *affirmed as correctly announcing the law*, 138 Tex. 16, 155 S.W.2d 912 (1941).

*Black Lake Pipe Line Co. v. Union Construction Company, Inc.*, 538 S.W.2d 80, 86 (Tex.1976) (emphasis added). Under *Black Lake*, the crucial question with respect to *quantum meruit* is whether the services and materials in issue here were "covered by the contract." In special issue three, the jury found $48,800.00 to be the "reasonable value of *all* services, labor and material furnished by the plaintiff for the benefit of defendants in repair and construction of the defendants' building over and above the amounts paid by the defendants to plaintiff and to the subcontractors engaged by plaintiff for such services, labor and material . . . ." (emphasis added). Appellee, by that issue, has not attempted to limit the *quantum meruit* recovery to "extras" but has expanded the issue to include recovery for all services performed and material delivered that were not paid for by the appellants. Additionally, the jury found that appellants had "waived" the contractual requirement that all alterations or deviations were to be agreed to in writing before execution. The combined effect of special issue three and the jury's finding of waiver takes this case outside the scope of *Black Lake, supra*, 538 S.W.2d at 89–91. In *Black Lake*, the supreme court was construing the following provisions of a construction contract:

> Company may, at any time before completion of the work, make amendments, deletions, or additions to the Technical Specifications or the attachments thereto so long as such changes do not enlarge or

diminish the scope of the work to be done under this contract. Contractor agrees that he will comply with such changes and that if such changes result in any increase or decrease in the cost to Contractor of performing this contract, then there shall be a corresponding increase or decrease in the consideration to be paid Contractor under this Contract.

538 S.W.2d at 89–90. The court stated: Black Lake argues that the above contract provisions authorized it to change the technical specifications and require any work necessary to comply with the amended specifications. Union and MPD contend, on the other hand, that their contracts required them to perform extra work only upon the filing of *written* amendments to the technical specifications. It is undisputed that the technical specifications were not amended to cover the items of extra work in question. According to Black Lake, it is unimportant whether amendments to the technical specifications were oral or written. We disagree. Both the prime contract and the subcontract contemplated that the contractors' obligations would be determined by the written agreement. Section 1 of both contracts provides that "no modifications or supplement to any part of said entire agreement so constituted shall hereafter be made except by written agreement signed by both parties." Black Lake could order work in excess of the technical specifications, but Union and MPD were not bound if the specifications were not amended to cover the work. We find it quite understandable that Union and MPD chose not to be bound to perform extra work unless Black Lake amended the technical specifications in writing. This was the contractors' protection against being obligated to perform work that Black Lake did not consider extra and for which Black Lake was unwilling to pay additional compensation.

538 S.W.2d at 90–91. The distinction between *Black Lake* and the present case lies in the jury finding that the appellants waived the requirement that changes and alterations be agreed to in writing before execution. The waiver of the writing requirement results in the conclusion that the "extras" agreed to orally were "covered by the contract" and were to be compensated for according to the terms of the contract, to wit:

All changes or alterations from the drawings will be charged by labor and materials plus 25% burden and 10% profit.

■ Appellee, in response, argues that *quantum meruit* recovery should be allowed under the recognized exception that a contractor can recover in *quantum meruit* in the face of an express contract if the owner has precluded the contractor from completing the construction. *Dankowski v. Cremona*, 352 S.W.2d 334 (Tex.Civ.App.—Eastland 1961, writ ref'd n. r. e.), supports the appellee's theory of recovery.

Where there has been a partial performance by one of the parties to a contract and further performance is wrongfully prevented by the other party, and the rights of the parties in such circumstances can be determined from the contract, the injured party may recover either on the contract or in *quantum meruit*, at his election.

352 S.W.2d at 336. Appellee contends that completion of the work was precluded by appellants' refusal to make periodic progress payments. Refusal to make periodic progress payments as required by the relevant contract has been held to justify recovery in *quantum meruit*. *United States v. Safeco Insurance Co. of America*, 555 F.2d 535, 542 (5th Cir. 1977) (applying Texas law). However, the contract between the parties in this case does not require "periodic progress payments" but merely allows for "additional draws of 10% as work progresses." Questions of fact were presented at trial concerning whether the parties orally agreed to progress payments on the extras and whether appellants refused to make a requested payment or simply requested further itemization before payment. Since appellee did not request special issues to resolve these questions of

fact, the issues were waived. Tex.R.Civ.P. 279; *Houston Lumber Supply Company v. Wockenfuss*, 386 S.W.2d 330, 336 (Tex.Civ. App.—Houston 1965, writ ref'd n. r. e.). We conclude that appellee has not brought itself within an exception to the general rule that *quantum meruit* recovery is denied for services and material "covered by the contract."

In support of its alternative contract theory of recovery, appellee requested and received submission of the following special issue:

> What amount, if any, do you find from a preponderance of the evidence to be the reasonable value of extras, if any, furnished by the Plaintiff under the $100,500 contract?

In light of the wording of the contract calling for alterations and changes to be "charged by labor and materials" plus 35%, we hold that appellants were correct when they objected that "cost" to appellee of the materials and labor should control rather than "reasonable value." We therefore reverse and remand for a new trial. This decision renders it unnecessary to consider the other points raised by appellants.

Reversed and remanded.