NO. 07-08-0312-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

DECEMBER 6, 2010

_____

ANOTHER ATTIC, LTD., APPELLANT

V.

PLAINS BUILDERS, INC., WENDY WHITE, AS INDEPENDENT EXECUTRIX OF
THE ESTATE OF G. TIM WHITE, FORMERLY D/B/A WHITE ASSOCIATES
ARCHITECTURE, AND CHAVEZ CONCRETE COMPANY, APPELLEES

_____

FROM THE 64TH DISTRICT COURT OF HALE COUNTY;

NO. A33892-0502, HONORABLE ROBERT KINKAID, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Another Attic, Ltd. ("Another Attic"), a limited liability partnership,
appeals from a judgment rendered in favor of Appellees, Plains Builders, Inc. ("Plains
Builders"), Wendy White, as Independent Executrix of the Estate of G. Tim White,
formerly d/b/a White Associates Architecture ("White"), and Chavez Concrete Company
("Chavez"), in a contract dispute lawsuit arising out of a written contract. By eight

issues, Another Attic questions the liability determination (Issues 1 through 4), the legal sufficiency of the damages (Issue 5), the trial court's finding that the contract was unambiguous (Issue 6), its failure to submit certain instructions and questions (Issue 7), and its award of attorney's fees (Issue 8). We modify the judgment and affirm as modified.

## Factual Background

In 2004, Plains Builders and Another Attic executed a written contract for the construction of a mini-storage facility in Plainview, Texas. Plains Builders subcontracted the architect-related work to White and concrete work to Chavez. Construction began in May of that year; however, towards the end of construction, disputes arose about the work being performed by Plains Builders. By a letter dated October 8, 2004, Another Attic directed Plains Builders to cease work, which it did. Plains Builders contended that, at the time it was ordered off the project, Another Attic owed it $57,938 under the terms of the contract. According to Plains Builders this sum was calculated by deducting from the full contract price, the sum of the amounts already paid plus the value of work that was not performed by Plains Builders due to Another Attic's termination of the contract.[1] Another Attic refused to pay this sum and on February 4, 2005, Plains Builders filed suit for breach of contract for failure to pay, declaratory judgment as to substantial completion, and enforcement of its statutory mechanic's and materialmen's lien. Asserting lack of substantial completion, Another

---

[1]Plains Builders contends that it allowed credit to Another Attic for items of work that had not yet been completed at the time it was ordered off the job. Specifically, Plains Builders offered evidence that it allowed credit for its "cost plus all markup" relating to installation of the gate operating system, landscaping, and sprinklers.

2

Attic filed multiple counterclaims against Plains Builders, as well as a third-party claim against two of the subcontractors, the architect, White, and the concrete provider, Chavez. Another Attic contended the work performed was so defective the alleged deficiencies could not be remedied without having the entire facility torn down and rebuilt. Another Attic also contended that certain provisions of the contract were ambiguous.

On April 5, 2008, the trial court submitted the dispute to a jury based upon thirteen questions. The first two questions dealt with the issue of contract liability, as it pertained to the dispute between Another Attic and Plains Builders. As submitted to the jury, questions one and two, together with the jury's verdict, provided as follows:

**QUESTION NO. 1**

Did ANOTHER ATTIC fail to comply with the construction contract?

You are instructed that a "failure to comply" is an unjustified failure or refusal of one of the parties to the contract to perform all or part of what is promised in the contract. Failure to comply by Another Attic would be excused by a previous failure by Plains Builders to comply with a material obligation of the same agreement. A failure to comply must be material. A "failure to comply" becomes material when it deprives the injured party of any substantial benefit which the injured party could reasonably have anticipated. The less the non-breaching party is deprived of expected benefit, the less material the breach.

Answer "Yes" or "No"

Answer: __Yes__

**QUESTION NO. 2**

Did PLAINS BUILDERS fail to comply with the construction contract?

You are instructed that a "failure to comply" is an unjustified failure or refusal of one of the parties to the contract to perform all or part of what is promised in the contract. Failure to comply by Plains Builders would be

3

excused by a previous failure by Another Attic to comply with a material obligation of the same agreement. A "failure to comply" must be material. A "failure to comply" becomes material when it deprives the injured party of any substantial benefit which the injured party could have [sic] reasonably have anticipated. The less the non-breaching party is deprived of expected benefits, the less material the breach.

Answer "Yes" or "No"

Answer: __No__

Another Attic did not object to the submission of these liability questions or the corresponding instructions in any respect material to this appeal. By these issues the jury was asked to determine whether Another Attic and/or Plains Builders materially breached the contract. Simply stated, the jury decided that Another Attic did (excusing Plains Builders from further performance) and that Plains Builders did not (thereby rejecting Another Attic's defective construction claims).

Having found that Another Attic had breached the contract in question (Question No. 1), and that Plains Builders had not (Question No. 2), the jury concluded that as a result thereof, Plains Builders had been damaged in the sum of $57,938 (Question No. 3). The jury also found that neither White, nor Chavez, had negligently damaged Another Attic (Question Nos. 10 and 12, respectively). Due to their conditional submission, the remaining jury questions were unanswered. Following cross-motions for judgment, on July 15, 2008, the trial court entered judgment that Plains Builders recover of and from Another Attic the sum of $57,938, plus attorney's fees, pre-judgment interest and costs of court, together with foreclosure of its mechanic's and

4

materialmen's lien.  The judgment further provided that Another Attic take nothing as to White and Chavez and that it recover costs of court from Another Attic.

## Substantial Performance Versus Excused Performance

A considerable portion of Another Attic's arguments is predicated on the premise that Plains Builders's theory of recovery was based upon the equitable doctrine of substantial performance.  At trial and on appeal, Another Attic has pursued a theory that defects in the construction of the mini-storage facility were so material they could not be remedied without the entire facility being torn down and rebuilt.  Another Attic posits that because substantial performance requires that any defects be remediable without doing material damage to the structure, there can be no substantial performance as a matter of law.  Plains Builders counters this argument by contending that "this is not a substantial performance case," or, alternatively, that the defects that could not be remediated without doing material damage to the structure, if any, were immaterial. Plains Builders further contends that this is a suit for "breach of contract, quantum meruit and unjust enrichment."[2]

In an ordinary contract case, a party who has materially breached a contract cannot maintain a suit on the contract for its breach by the other party to the contract. *Gulf Pipe Line Co. v. Nearen,* 135 Tex. 50, 56, 138 S.W.2d 1065, 1068 (Tex. 1940). However, in the area of construction contracts, this strict rule has been relaxed by the equitable doctrine of substantial performance which allows a *breaching* party who has "substantially completed" a construction contract to sue for the recovery of damages

---

[2]Plains Builders's quantum meruit and unjust enrichment claims were not submitted to the jury.

under that contract rather than being relegated to a cause of action based on breach of contract and quantum meruit. *See Dobbins v. Redden,* 785 S.W.2d 377, 378 (Tex. 1990); *Vance v. My Apartment Steak House of San Antonio, Inc.,* 677 S.W.2d 480, 481 (Tex. 1984); *RAJ Partners, Ltd. v. Darco Constr. Corp.*, 217 S.W.3d 638, 643 (Tex.App. --Amarillo 2006, no pet.). By definition, the doctrine recognizes that the contractor has breached his obligations under the contract; and, accordingly, his recovery is decreased by the cost of remedying those defects or omissions for which he is responsible. *Vance,* 677 S.W.2d at 482. The doctrine also assumes that, if there is substantial performance by the contractor, any breach by the contractor is immaterial. *R.B. Hardy & Sons, Inc. v. Hoyer Global (USA), Inc.,* No. 01-09-0041-CV, 2010 Tex.App. LEXIS 4373, at *18-19, (Tex.App.--Houston [1st Dist.] June 10, 2010, pet. filed).

Substantial performance is not, however, the exclusive theory upon which a contractor can pursue recovery in a dispute concerning a construction contract where that contractor has not completed full performance of the contract. Under the doctrine of repudiation, a party's further performance under a contract is excused if the opposing party has repudiated the contract. *Burford v. Pounders,* 145 Tex. 460, 465-67, 199 S.W.2d 141, 144-45 (Tex. 1947). A repudiation occurs when a party absolutely repudiates the obligation, without just excuse, and the other party is damaged by the repudiation. *Consumer Portfolio Servs. v. Obregon,* No. 13-09-00548-CV, 2010 Tex.App. Lexis 8835, at *11-12, (Tex.App.--Corpus Christi Nov. 4, 2010, no pet. h.) (mem. op.). Furthermore, in those situations where the other party to the contract has materially breached the contract, the contractor's failure to complete full performance

6

may be excused. *Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S.W.3d 195, 198 (Tex. 2004); *Lazy M Ranch v. TXI Operation, LP*, 978 S.W.2d 678, 680-81 (Tex.App.--Austin 1998, pet. denied).

In cases where a contractor has not fully performed his obligations under the contract, neither the doctrine of substantial performance nor the doctrine of excused performance permits the breaching contractor to recover the full consideration provided for in the contract. Where the theory of recovery has been substantial performance, courts have limited the amount recoverable by the contractor to "the contract price, less the reasonable cost of remedying the defects or omissions in such a way as to make the building conform to the contract." *Atkinson v. Jackson Bros.,* 270 S.W. 848, 851 (Tex. Comm'n App. 1925, holding approved). Where a contractor has failed to complete a construction contract because full performance has been excused due to a material breach or repudiation of the contract by the owner, courts have limited the amount recoverable by the contractor to the damages suffered by reason of the breach of contract. *Dankowski v. Cremona,* 352 S.W.2d 334, 336 (Tex.App.--Eastland 1961, writ ref'd n.r.e.) Equity requires that the contractor recover that amount of money which would place the contractor in a position equivalent to that which he would have occupied if there had been no breach, and the contract had been fully performed. *Id.* In such situations, the contractor is entitled to recover the value of his work had the contract been completed, i.e., the contract price, less the value of any work not completed due to the builder's repudiation or material breach. *Dill v. Helms,* 468 S.W.2d 608, 611 (Tex.App.--Waco 1971, writ ref'd n.r.e.).

7

**Issue One**

By its first issue, Another Attic contends the trial court erred by denying its motion for instructed verdict and motion for judgment *non obstante veredicto* because there was no substantial completion as a matter of law.

The denial of a motion for instructed verdict may be reviewed on appeal only if that ruling has been recited in a formal order or in the final judgment. *See Wal-Mart Stores, Inc. v. Berry,* 833 S.W.2d 587, 590 (Tex.App.--Texarkana 1992, writ denied). The oral denial of a directed verdict is insufficient to preserve error. *Id.* Because the denial of Another Attic's motion for directed verdict is not contained in a written order of the trial court, nothing is preserved for review.

A trial court may disregard a jury finding and enter a judgment *non obstante veredicto* ("JNOV") if a directed verdict would have been proper, or if there is no evidence to support one or more of the jury findings necessary to liability. *See* Tex. R. Civ. P. 301; *Tiller v. McLure,* 121 S.W.3d 709, 713 (Tex. 2003). We review the denial of a motion for JNOV under a "no evidence" standard, meaning we credit evidence favoring the jury verdict if a reasonable juror could, and disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex. 2005). The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827. In our determination, we must uphold the jury's finding if more than a scintilla of competent evidence supports it. "No evidence" points must only be sustained when the

8

record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810; *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied,* 541 U.S. 1030, 124 S.Ct. 2097, 158 L.Ed.2d 711 (2004).

In this case, the jury questions submitted track the Texas Pattern Jury Charge recommended for a breach of contract case. Comm. On Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges - Business, Consumer, Insurance & Employment* PJC 101.2 (2008). The instructions following the submission of questions one and two also roughly follow the instructions contained in PJC 101.22 pertaining to excused performance due to a material breach of contract. *Id.* at 101.22. Neither question asked the jury to make a finding on the issue of "substantial performance." Nevertheless, Another Attic contends the trial court erred in denying its motion for judgment *non obstante veredicto* because various defects impaired the structure as a whole, preventing a finding of substantial performance as a matter of law. However, under the theory of liability submitted to the jury, substantial performance was not a vital fact. Having chosen to submit the issue to the jury as a straight breach of contract case, Another Attic cannot now complain that the trial court erred in somehow not applying a theory of recovery not presented to the jury.

As stated above, the liability issue was submitted to the jury by asking two basic questions: (1) did Another Attic fail to comply with the contract, and (2) did Plains

9

Builders fail to comply with the contract? In this case, the jury was presented with evidence pertaining to alleged defects or omissions in seven particular areas: (1) the location of steel in the concrete, (2) the adequacy of the concrete finish work, (3) whether a cross walk was in violation of the Texas Accessibility Standards, (4) whether a portion of the finished building lies within a 100-year flood plain, (5) whether the appropriate insulation was installed, (6) the installation of a security gate, and (7) completion of landscaping. The jury was presented with evidence from both lay witnesses and experts concerning the existence and *materiality* of each of these alleged defects. The jury was also presented with testimony concerning the value of the work not performed.

As the issue was framed, based on the evidence presented, the jury could have reasonably concluded that: (1) the alleged defects were not material, (2) Another Attic was not justified in repudiating the contract, (3) Another Attic's termination of the contract was a material breach of its obligations under the contract, (4) Plains Builders was thus prevented from completing the remainder of its obligations under the contract, (5) Another Attic's breach excused Plains Builders from further performance, and (6) Plains Builders had allowed an appropriate credit for work not completed. Accordingly, the record contains legally sufficient evidence to support the jury's liability findings. Issue one is overruled.

10

**Issues Two - Four**

By its next three issues, Another Attic essentially contends the trial court erred by either submitting questions one and two, or by accepting the jury's verdict thereto because the findings are not supported by legally or factually sufficient evidence. As stated above, we have already found that the evidence supporting the jury's liability findings is legally sufficient.

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). In reviewing factual sufficiency, the reviewing court must consider, examine, and weigh all of the evidence in the record. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406-07 (Tex. 1998), *cert. denied,* 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998). In doing so, the court no longer considers the evidence in the light most favorable to the jury's finding; instead, the court considers and weighs all the evidence and sets aside the disputed finding only if it is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* at 407; *Gooch v. American Sling Co.,* 902 S.W.2d 181, 183-84 (Tex.App.–Fort Worth 1995, no writ).

Having reviewed the evidence in the light most favorable to the judgment, we cannot say that reasonable and fair-minded people could not have reached the verdict in question. Furthermore, having reviewed the evidence in a neutral light, we cannot

11

say that the disputed findings are so contrary to the great weight and preponderance of the evidence as to be clearly wrong or unjust. Accordingly, we conclude the evidence was both legally and factually sufficient to support the jury's affirmative finding as to Another Attic's breach and its negative finding as to Plains Builders's breach. Issues two, three, and four are overruled.

**Issue Five**

By its fifth issue, Another Attic contests the legal sufficiency of the jury's determination of damages. Specifically, Another Attic contends there was no evidence regarding the cost of remediating the "admitted defects." Another Attic contends that when a contractor seeks recovery on a substantial performance theory, the contractor has the burden to prove the reasonable cost of remedying the defects or omissions necessary to constitute complete performance. Again, Another Attic's argument is erroneously predicated on the assumption that Plains Builders's theory of recovery was based upon the equitable doctrine of substantial performance.

Where, as here, the jury found that Plains Builders did not breach its contractual obligation in any material fashion; Plains Builders did not have the burden to prove the reasonable cost of remediating any alleged defects. Plains Builders was entitled to recover the full unpaid contract price, less the value of any work not completed due to Another Attic's initial breach of contract by wrongfully preventing full performance. Because evidence was presented concerning the value of work not completed, Plains

12

Builders met its burden to establish it damages under the theory of recovery presented.

Issue five is overruled.

## Issue Six

By its sixth issue, Another Attic contends the trial court erred in finding the contract in question to be unambiguous on the issue of the insulation specifications.[3] The only provision in the construction contract signed by the parties pertaining to insulation provides as follows:

> All roof and separation walls in the dust control areas will be insulated with 3" fiberglass insulation with UL flamespread vapor barrier.

Based on an exchange of pre-contract negotiation letters, Another Attic contends the contract was ambiguous because its contracting agent was operating under the belief that certain specifications were incorporated into the contract. Specifically, Another Attic contends the contract incorporated language contained in a letter from DCD Services, Inc. to Another Attic, which included the language "Insulation: 3" VRR in roof only". The trial court ruled that the construction contract was not ambiguous and denied Another Attic's requested charge regarding the ambiguity question.

Whether or not a contract is ambiguous is a question of law to be reviewed by an appellate court pursuant to a *de novo* review. *Kothmann v. Rothwell,* 280 S.W.2d 877, 879 (Tex.App.--Amarillo 2009, no pet.). In conducting a *de novo* review, we exercise our own judgment and determine each legal issue. *Id.* If the written agreement is so

---

[3]In both its *Statement of the Case* and *Summary of Argument,* Another Attic references two alleged items of ambiguity in the contract: (1) the insulation specifications and (2) the gate operating system. Because Another Attic's brief presents no arguments and no record references to any ambiguity concerning the gate operating system, that argument is inadequately briefed and is, therefore, waived. *See* Tex. R. App. P. 38.1(h); *White v. Baptist St. Anthony's Hosp.,* 188 S.W.3d 373, 374 (Tex.App.--Amarillo 2006, pet denied).

worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Coker v. Coker,* 650 S.W.2d 391 (Tex. 1983). Here, the contractual provision pertaining to insulation, as set forth above, is subject to one clear, certain and definite meaning or interpretation. Accordingly, the trial court did not err in finding the contract to be unambiguous as it pertains to the insulation specifications. Issue six is overruled.

**Issue Seven**

By its seventh issue, Another Attic contends the trial court erred by failing to submit to the jury its questions pertaining to Plains Builders's contractual warranty and its duty to supervise and perform the contract in a good and workmanlike manner. During the charge conference, Another Attic's attorney objected to the trial court's refusal to submit additional instructions following Question No. Six. Specifically, Another Attic argued that the court's charge should contain language from the contract regarding Plains Builders's warranty obligation to replace any defective materials and that the failure to include that language would improperly prevent the jury from considering the labor costs incident to replacement of defective materials.

The jury's obligation to answer Question No. Six was specifically predicated on an affirmative answer to Question No. Two regarding whether or not Plains Builders had materially breached its obligations under the construction contract. Because the jury answered Question No. Two, "No," it did not answer Question No. Six. Therefore, any

error in refusing Another Attic's requested instructions following Question No. Six would have been harmless. *See* Tex. R. App. P. 44.1(a). Issue seven is overruled.

## Issue Eight

By its eighth and final issue, Another Attic contends the trial court erred in awarding attorney's fees when there was no evidence submitted regarding the qualifications and nature of work performed by two paralegals/legal assistants assisting Plains Builders's attorney, for which recovery was granted. Specifically, Another Attic contends that the award of attorney's fees should be reduced by $3,086.25, because there was no evidence presented pertaining to the work performed by the two paralegals/legal assistants other than their hourly rate and number of hours expended.[4]

An award of attorney's fees may include a legal assistant's time to the extent that the work performed "has traditionally been done by an attorney." *All Seasons Window & Door Mfg. v. Red Dot Corp.,* 181 S.W.3d 490, 504 (Tex.App.--Texarkana 2005, no pet.) (quoting *Clary Corp. v. Smith,* 949 S.W.2d 452, 469 (Tex.App.--Fort Worth 1997, writ denied)). To recover attorney's fees for work performed by legal assistants, "the evidence must establish: (1) the qualifications of the legal assistant to perform substantive legal work; (2) that the legal assistant performed substantive legal work under the direction and supervision of an attorney; (3) the nature of the legal work performed; (4) the legal assistant's hourly rate; and (5) the number of hours expended by the legal assistant." *All Seasons Window & Door Mfg.,* 181 S.W.3d at 504 (quoting

---

[4]The statements attached to the *Affidavit in Support of Plaintiff's Attorney's Fees* submitted to the trial court include entries for paralegal/legal assistants, C. Y. Hopkins and R. J. Brashears, totaling $3,067.50 and $18.75, respectively. The affidavit does not otherwise discuss their qualifications or the work done.

15

*Multi-Moto Corp. v. ITT Commercial Fin. Corp.,* 806 S.W.2d 560, 570 (Tex.App.--Dallas 1990, writ denied)).

Plains Builders contends that, because the issue of attorney's fees was a matter submitted to the trial court for determination under the broad discretion afforded a trial court pursuant to section 38.004 of the Texas Civil Practices and Remedies Code, the award should be affirmed because it may be presumed that the court took judicial notice of usual and customary attorney's fees in making its award. *See Lee v. Perez,* 120 S.W.3d 463, 469 (Tex.App.--Houston [14th Dist.] 2003, no pet.). While section 38.004 may permit a judge to take judicial notice of usual and customary attorney's fees, it does not permit a judge to take judicial notice of the qualifications of a particular paralegal/legal assistant to perform substantive legal work, or whether that paralegal/legal assistant actually performed work traditionally performed by an attorney. Accordingly, we modify the judgment to reduce the attorney's fees awarded to Plains Builders by the sum of $3,086.25.

**Conclusion**

Having overruled issues one through seven and having modified the judgment to reduce the recovery of attorney's fees pursuant to issue eight; the judgment of the trial court is affirmed as modified.

Per Curiam

16